Case number 171961, Thomas Russell v. CSK Auto Corporation. Arguments not to exceed 15 minutes per side. Mr. Dletka for the appellate. Sorry, I forgot it was on there. Brian Dletka on behalf of the appellate, Thomas Russell. I'd like to start out by reserving five minutes for rebuttal. I'd like to start out by getting into the crux of our FMLA interference claim, which is the fact that Mr. Russell was denied an FMLA benefit. The district court on this case ruled that he was not denied, or that the plaintiff didn't show that he was removed. 29 CFR 825.215 states that an employer is to be returned to an equivalent position upon his return from FMLA. That code also goes into further detail, defining what an equivalent position is, defining that it's equivalent in terms of pay, benefits, and working conditions, including privileges. The assurance pay would fall under that definition as either a privilege of the working condition or as a... It's not that there's this categorical imperative that nothing whatsoever can change for any reason. If the person commits a felony while they're on leave, it doesn't require that. It really does turn on whether the district court's finding is correct. This is the extraordinary case that comes to us, not on summary judgment in favor of the defendant, but after a full trial, when the district court heard the evidence, and frankly, she believed Gidowski. He was the employer, the manager. I guess my initial question is, why isn't his testimony alone that there was no discriminatory motive for his actions? Why isn't that alone enough to support the verdict here? I think when you look at a couple different factors, one, obviously, if we're getting into the honest belief and those kind of things to legitimate business reason, one, this individual was the same person who also removed his... Who of any defendant? I mean, what are we going to say? He can't rely on a defendant's testimony? No, what I was going to say was he was the person who removed the assurance pay in 2010 when he took FMLA and also again in 2012 when he took FMLA. But I think the factor is we look at what facts he would have relied upon and what his investigative process was. And when the judge asked him, you know, why is he no longer qualified for assurance pay, he really couldn't provide an answer. He kind of danced around the question to the point where he obviously said... He hadn't... I mean, the plaintiff had not met the targets for years. Everybody else except one person was off the assurance pay. No, that's not correct, Your Honor. Only 28 members had been removed from assurance pay. There were other members in that district. Most of the members in that district had been removed, but there were still many others in the assurance pay. Twenty-eight had already been taken off. Godowski, I guess you were asking us to reverse the In some aspects, yes. I'm saying look at what the other... That's an extraordinary thing. Yes, but I think if you look at the other documents that are in front of it at that point in time and look at what the actual investigation was, you have Mr. Russell increasing his sales by $122,000. I don't say that to say that his decision was incorrect, but to say what facts was he actually looking at to make this decision. He didn't hit the number to get that commission, correct? It was impossible to almost. The number was 2.6 when he came in the stores, 1.3. The highest store in the district was only at 1.8, and that was store of the region two years in a row at that point in time. So to think that he could hit $800,000 plus that at his store, where is the rational basis for that? So I think when you look at that, you say how could he possibly have presumed that that number was possible at that particular store when no other store in that district could have even come close to that number? He himself admitted that this was not going to cover his assurance pay and stated that, look, you'll come off assurance pay when your store either hits sales that are equal to the assurance pay or when we move you to a store that can absorb your salary. Neither one of those situations happened, yet he was removed. But I think the biggest factor is you look at the fact that he's reviewed every three months. He was reviewed from 2010 to 2012, up for review seven particular times. Every other time except for the time after he uses FMLA, he is renewed. So what changed between that seventh and eighth time? And the jury, so to speak, found otherwise. Heard everything, found otherwise. Yeah, but I think if you just go back and look at those facts, that's where the difference is. We look at the documents themselves. Here you have a person that's testifying based off facts that are at the litigation aspect, not providing any documentation that was shown at the actual time of the decision-making process. And that's where our concern comes into play. Jeff Young, the district manager, disputed the decision and said, look, I don't think you should come off at this point in time. They've relied on no facts at that point in time that would have shown that he wasn't meeting, other than the sales, which was true for anybody on assurance pay because that was the entire purpose of assurance pay. Look, I mean, the assurance pay, obviously 28 other people went off the assurance pay. I think the initial time they extended the insurance pay, he said it would be for two years. Am I remembering that right? It was initially all advantages are put on for one year to start out with. Then they're extended at a three-month basis or up to a year. The two-year assurance pay for Mr. Russell, Gadowski, I believe it was, said, I'm going to resume it for two years. That is not correct, Your Honor. The defendant makes that argument in their brief. However, there is no factual support for that finding. In fact, if you look at the interrogatory responses that the defendant provided Mr. Gadowski, when this case started, he didn't state that, look, the two-year period had expired and that's why we removed him. He stated that it was for the sales not reaching, being able to be afforded off the store, which, in fact, isn't correct either because the store, for the first time in its history, had a net profit at that point in time, which would have included his salary. The fact that Mr. Russell increased sales by $122,000 actually covered his entire salary for that two-year period of time, not just the difference between the commissions and the assurance pay. So that two-year period of time was made up based off of two comments in the record, one with Ms. Bartos, who was opposing counsel at trial, where she was kind of pondering the fact that this was almost exactly a two-year period but never asked a question or made it actually a fact. The other one references Mr. Gadowski saying that during that two-year period, because it was two years when he approximately came off, though a little bit off by about a month or so, but neither one of those was a set two period. There's no evidence, no facts to support a two-year set period of time. And so that kind of, I think if you were to look at the set two-year period of time and that was the case, it would make a large difference in this case, but that was not the facts in front of the court. If 28 people were removed, how many people were still on assurance pay? He had 102 people in the region, so the remaining members would have all been still on the assurance pay. Still on assurance pay, so many more than the 28 that were removed. That's correct, Your Honor. And when we look at the 28 numbers, the 28 weren't necessarily removed for the same reason as Mr. Russell. So one of the main reasons people would come off assurance pay was their stores were having commissions that were above the assurance pay because maybe their salary was lower or maybe they were at a higher-volume store. So at those points, those employees would come off. Mr. Gadowski also testified that people would be removed from the assurance pay if they were truly terrible performance. He said there were some very terrible performance here, but Mr. Russell was not one of those. As he noted, he was a very good manager and, in fact, number one in the region in most of the categories that he said he would have looked at. He stated that he would have looked at cash ticket average, related product maximum sales, and dialing for dollars. Mr. Russell was number one in cash ticket average. He was number one in related maximum sales. He was in the top half percent of dialing for dollars. The other factor he said he would have looked at was employee development. In terms of employee development, we have Georgia First, who was his assistant store manager at that time. Right around the time he was removed from assurance pay, Ms. First was put up for the LEAD program, which is training to become a store manager, and eventually replaced Mr. Russell when he stopped being store manager. You've been talking about the interference claim, which does not require any showing of intent. We moved to that, yes. It started out with the interference. I think this argument goes somewhat to the retaliation argument, but also to honesty. One sort of basic question is, because this was a bench trial, is your complaint mostly a question of legal error by the district judge or clearly erroneous fact finding? I think in terms of the interference claim, it's more of an error of law in that aspect, because one, she didn't find that there was an interference with the FMLA benefits, yet stated that there was removal of assurance pay, and that occurred while he was on his FMLA leave, thereby denying him an FMLA benefit. So I think at that point, that's an error. She didn't get to the next point to determine whether or not that would have been removed, regardless of his FMLA use. But I think when we look at the fact that it hadn't been the seven previous times, it kind of makes it look as if that was the case. So one question on the retaliation claim that I wondered about was Yvonne Cronin. Yes. And was she a comparator, and if so, what did the district judge find about her? Yes, I believe she was a comparator. Almost exactly the same time, she had been put on assurance pay the exact same date when O'Reilly's had transitioned over. She had been on the assurance pay just as long, in fact a little bit longer, because Mr. Russell, after his first FMLA, had missed about two months when he was removed from it. So they're identical in those regards. They'd both been store managers about the exact same time. And the district court found that she wasn't a comparable employee based on the fact that she had gone to a new store, but so had Mr. Russell. But Russell had gone to a new store too. Exactly, a new store to him, yes. So Cronin, somewhere I recall seeing that she had been on assurance pay for 47 months. Yes. And how long had Mr. Russell been on assurance? About 44, because he lost about two months in 2010. And I think when you look at those kind of factors, it's a very similar situation. And if you also look at two of the other employees that were on that list as well, Mr. Boettcher and Mr. Pazonka, there's information to show that they were also their assurance pay was not equal to their commissions as well, and yet they were extended at the exact same time as Mr. And none of those three took FMLA leave. That is correct. Thank you. Good morning to the court. I'm Mark Douglas Curlew on behalf of CSK Automotive, or O'Reilly as I really are now. I listen to these. I'm rarely impressed with my oral argument, but I like my brief in this case. So for the most part, I would rely on that. I just want to address a couple of things specifically that were just said. First, with regard to the two-year opportunity, that was, in fact, testimony. That was Godowsky's testimony. It was on page 175. In response to her questions by the judge, she was interrogating him, as she did at various points with various witnesses during the trial, for clarification as to what he was saying. And he points out that what we had discussed at this meeting back in December of 2010 was that he went to the Lapeer store. I was giving him this two-year opportunity. There would be three-month interval reviews, but I was giving him a two-year opportunity, and that was what ran out at the time the assurance pay was ultimately removed. Is that an exact quote? I don't have the page right in front of me. Oh, I'm sorry. Yes, I do have it in front of me. You actually have to read it in part with pages 151 and 152 where he says, and this was discussed with him, that, okay, we're going to give you that opportunity of two years based on what he was making and based on his desire to be close to home and not willing to move, that we came to the point then where a decision had to be made. Okay? You've done good things here. You've grown sales. You've grown profits, but not to the level of the salary you're making in this particular store. That's on page 175. Also, it was in responses to the judge's questioning, there was no evidence I saw that only 28 managers were removed. As I point out in the brief, Godowsky was in charge of 102 managers. In his trial testimony, again, and this is in clarification to questioning from Judge Parker, pages 180 to 181, she said there was a point where it had been mentioned in an interrogatory answer, I think, that he was the last one removed from insurance pay. She clarified that he was not the last one removed. He was the second to last out of those people that a Godowsky was overseeing. The other 70 that your friend spoke about. Pardon me? I thought we heard your friend at the opposing counsel table talk about 70-odd other people who remained on insurance pay after Mr. Russell was taken off. I honestly don't know where that would come from in the record. The testimony of Godowsky was that he was not the last removed, clarifying this to the judge. He was the second to last under my management who was removed. That was my understanding from the briefs, but we heard otherwise. I don't know where that's coming from. I can cite the court to pages 180 to 181 of the trial transcript. Of the trial transcript, okay. I would say it's interesting that there was emphasis on two other things made here. One was that the removal of insurance pay was the interference that the judge should have found. As we point out in the brief, it's an interference if you lose an entitlement. There was no entitlement. First, there was a one-year guarantee. He had that full year. Then Godowsky comes and gives him another opportunity, another two years. So he's gotten all that, and he's the second to last one removed. There was no entitlement to insurance pay. His own testimony, and we quote it in the brief, was that, I understood it wasn't supposed to last forever. There was no retaliation in the motive here. What the judge found was, and this was paragraphs 52 and 60 of her opinion, he was removed because that was the economic mechanism of the payment system. Now, we may debate whether O'Reilly has the best system for paying its managers. If we were a business school and wanted to do a case study, that would be great. But the question here is whether or not that was a violation of the FMLA. Was it an entitlement that was taken away? And the answer is no. It was something he was actually given far more of than his fellow managers because they wanted to accommodate him. They didn't want to get rid of him. They tried to accommodate him in his location and his pay. Sorry. You're talking so loudly that it's hard to get in. Does that depend on accepting the idea that others, that there are not other comparables that he should be compared to? And in particular, what about Yvonne Cronin? And he's mentioned two other individuals. Why are they not comparables? Because the assurance pay isn't based on comparative to other people. It's simply an economic formula between what that particular manager's particular store is doing relative to his salary, and that applies to everyone. So you're saying, then, that there are no comparables in this system because each person is treated as an individual? Correct. Godowski testified to that. Wouldn't that theory, if that were a theory, enable any employer to avoid any claims of FMLA retaliation or interference, especially retaliation claims, or any claims of discriminatory treatment if the employer can simply say each individual is a unique individual and, therefore, there are no comparables? If they were saying that we're just making decisions on our own assessment, subjective assessment, here they've got numbers. They base it on the numbers of the store versus the salary, rather than just, well, I like this manager, I don't like this manager. Here's the formula. You meet it or you don't, and that applies to every single manager the same. The Cronin difference is, and it was mentioned, it was a new store. Well, there was a little confusion there. It was not just new to her, as the Lapeer store was an existing store that was new to Russell. The store that Cronin had was a new store that was not only new to her, but was a new store altogether, just a grand opening with no background, no history in the community to try to build on. Russell had a store that was existing, and as Godowski pointed out, he was doing better than the other manager. He was doing good. He was increasing sales. They didn't want to get rid of him. They didn't want to retaliate. They didn't want to take away stuff from him. They wanted to keep him because he was doing a better job for them than others. But under the formula that applies to every manager individually with their store, his salary didn't justify the continuation of the assurance pay. Otherwise, you're saying it has to be a permanent guarantee, and that was never what it was intended to be, and he was extended way past what the guarantees were. Is there a written document that says that there was a two-year commitment and only two years for the assurance pay? No, there was nothing written. That was Godowski speaking to what his discussions had been at that meeting, the original meeting that he had, saying, you know, this is a long-term employee. We took him off the assurance pay, but I felt he deserved a meeting. I heard him out. I talked to him. I said, well, you know, you don't like the store you're at. You've got another store close to home, which is what you want. This is part of our discussion that the store, and he said, the store isn't doing what you need it to do, but I'll give you the opportunity there for two years, and he gave him that two years. Most of the others were off assurance pay well before two years. Well before two years, yes. Was Cronin the only one who had not been taken off other than Russell? I would have to interpret his, he was second to last in that sense that Cronin would have been the last. What about these two other individuals who your opponent referenced? Well, again, those individuals, the comparison, well, sure, maybe they— Were they longer than two years? I don't—well, there was no two-year guarantee to them at all. They were just kept on the assurance pay for a long period of time. The only two-year guarantee was strictly an oral thing with Russell. And the district judge made findings, you said to us at paragraphs 52 and 60, regarding the two-year— That her interpretation of the facts, her— and a plausible one was that he was removed from assurance pay simply because it didn't meet the economic formula that the compensation of O'Reilly calls for. But did she make findings of fact regarding the two-year aspect? I don't know whether—I would have to go back and look. I don't know if she specifically referenced that or not. Yeah, I think looking at those two paragraphs that you cited, there's no mention of two years whatsoever. No, there's not, but it shows that when the— but her ultimate conclusion, the one that matters, is that he was not removed for any reason related to the FMLA. He was removed because he was not making the amount of money that the economics of the payment plan called for. Did you present the two-year theory to the district court as a theory? It was in the testimony. I don't know whether it was specifically put into our proposed findings of fact or not. Because your opponents suggest that this is a new theory on appeal. Well, I don't think anything that's in the trial record that the judge could consider would be a new theory. Her decision is to be made based on her overall assessment. And obviously, since her opinion is only this long, and I've only got half the transcript this long, she can't write down absolutely everything about everything. She makes a certain set of findings. The ultimate finding be that he was removed from assurance pay for legitimate non-discriminatory reasons unrelated to his FMLA leave. If we were considering a jury verdict, and you had mentioned that Judge Kethledge, you'd just get a little bit. Who knows what goes on in their mind when they make a decision? You'd just get an ultimate decision pretty much on the jury verdict form. Here, at least, we have some measure of a few pages of information from the judge. But no, I don't think that she specifically mentioned the two years. But again, the ultimate question is not whether he was guaranteed one year at the beginning or two years more later by Godosky. The question is, was his removal related to his FMLA leave? And the answer is no. It was related specifically to the economic formula that the DWB managed. It seems like, apart from some flat-out legal error, the question is whether, as a matter of law, this record shows that he was removed. I'm sorry, his insurance pay was terminated because of retaliation for his FMLA leave, as a matter of law. That would be correct. That would be what the assailant would have to be saying, but the judge found that that clearly wasn't the case based on her assessment of the testimony that was given at the trial. As Your Honor pointed out, this isn't one of those summary judgment situations. The judge heard it, and as I point out in the brief, she not only heard the testimony of every witness they wanted to call, she accepted every single exhibit. At the end, she just made a blanket admission of all the exhibits that were there. You know, Mr. Russell was given every opportunity to carry his burden of persuasion with the judge. He simply failed to carry that burden as she assessed the evidence, and because her assessment of the evidence was plausible, it has to be upheld on appeal. What do you see about the temporal connection between the plaintiff taking FMLA leave and the times when he was proposed to incur the reduction in insurance pay? He either was seemingly coming off FMLA leave around the time that there was discussion about whether he would be reduced in pay. In the first instance, in the 2010, he admitted in his testimony that actually the insurance pay came off just before I went on FMLA leave. But he was put back on when he complained. The ultimate decision at the end came coincident. The FMLA leave was right before the end of that two-year period that he had been allowed. But coincident alone is not enough. There has to be something else to show the intent that there was an FMLA related motive to the action. And again, it was the matter of the simple economic numbers that did it. And again, they didn't want to lose him. They wanted to keep him. He was a good employee, but they had to keep him at a salary that was commensurate with the way his sales were going. If he wanted more money, he certainly had the opportunity still to increase his sales even more, as he was doing. If he had simply stayed on the job and kept working, he might have gotten back to the level that he wanted to be at. That's what the system would ask one to do. But again, this can't be a legal determination about whether or not they have a good system. It's a question of whether or not they were honest about why they did what they did. They took him off the insurance pay. They did not discharge him. They did not fire him. They did not take him back out of the Lapeer store. How much would he have to have increased sales in order to meet his insurance pay? His breakout number was $210,000. That was testified to. I don't know that there was any indication of exactly what his sales were at versus that $210,000 number at the time that the reduction of insurance, the removal of insurance pay happened. I don't remember that specifically coming up at the trial in the record. Perhaps my opponent can cite me to something on that, but I don't remember seeing that as I was taking my little note cards reading through the transcript. If the panel has no further questions, good. Thank you very much. I just want to kind of touch on a couple of the points. First, going back to that two-year period and the portion that he cited from the transcript, that states we're going to give you an opportunity after two years based on what he was making, and based on his desire to be close to home and not willing to move, that's when we came to the point where a decision had to be made. It wasn't referencing a set two-year period. He's just stating it had been two years since that point in time. We looked back again and made that decision. Big difference between the fact that it's been two years and that there's a set two-year period. Was there an oral contract between your client and your opponent that there would be a two-year period? Not to a two-year period. We believe there was an oral contract, the fact that he would stay on assurance pay as long as his sales continued to increase. But no, to your agreement, was part of that argument. And in terms of the assurance pay, some of the questions have come out about him being the second last person on assurance pay. That is incorrect. What the statement was from Mr. Godowski that he had misinformed the court at summary judgment was, was that he was the longest person on FMLA. He was, in fact, the second longest, but not the last person. There are still numerous people on assurance pay, and if you look at Exhibit 5, you can actually see all of those people are still on assurance pay, and there still remains tons of people on assurance pay as of today. Mr. Court refers to a total of 28 store managers. Well, no. No, go ahead. I'm sorry. You are correct. It refers to 28 store managers coming off of assurance pay. No, I mean, anyway, go ahead. Yeah, and it was stipulated, too, at the beginning that when the transition from Murray's to O'Reilly's took place, everyone was essentially put on assurance pay at that point in time, and when any new store manager comes on, they're put on assurance pay. So the opposing counsel also brought up the fact of this formula that he says Mr. Russell failed to meet. When we look at that formula, the question is, if that's the case, they were truly using a formula, A, what was that formula, and B, why wasn't that formula, the case for his removal, any one of those seven prior times? And that's, I think, the big question as to why it just happens to come up. The two times he loses assurance pay are the two times he uses FMLA. It just seems coincidental. Why, I mean, again, this just sounds like jury argument. How does this all show as a matter of law that the district court was wrong and, moreover, that we should basically disregard Civil Rule 52A6 and her assessment of everyone's credibility? Essentially, it goes to the fact that in order to establish an honest belief, which is what the judge said the defendant had, we have to show that the employer has to show that they actually made a legitimate looking into the facts and relied on the particularized facts at that point in time, and it also shows that they have to actually establish some facts that they did an actual review of the standards in this case. They haven't provided that, and so I think there's a misinterpretation of the law, and I think the judge gave extra deference to the company and simply said if they put forth a legitimate business decision, such as the Seventh Circuit would require, that that was sufficient, whereas the Sixth Circuit actually requires the employer to show that there's a particularized set of facts that they reviewed. I mean, it's your burden, not theirs. I understand the burden does stay with us, but they also have to produce that evidence. Otherwise, they can't use the honest belief, at which point we would have just flipped to the pretext argument and shown the similarly situated employers at that point in time. And so I think that's kind of where it varies from that point. And in terms of the sales, you asked a question about what the sales were. His sales when he came in were 1.33 million, and in order to hit his breakout number, it would have had to have hit 2.4 to 2.6 was where it came out, in terms of a yearly annual sales, and by the time he was done, he was at about 1.7 million after that two-year period of time. So a huge increase. It would have had to essentially double his sales within a two-year period of time to meet that aspect. Let me ask you this. As I understand, this assurance pay structure was something that was transitional. In other words, it was not permanent. It was really a temporary situation for all the employees. That being the case, what set of circumstances would have had to exist for your client to, at some point, have been removed from assurance pay without the company incurring an FMLA violation, without retaliation, and without a contractual problem? Sure. I think there's three situations. One, where he just isn't performing up to par in terms of his sales aren't increasing, his net profits aren't increasing, his store is just failing, which wasn't the case here. The other would be sales increased to the point and profits increased to the point where his store is equal to that of, the commissions are equal to that of the assurance pay. The third would have been he was moved to a store where the volume could take on what his assurance pay was and meet sales, could meet the assurance pay at that point. And that was actually testified to by Mr. Godowski as well, that those were basically the situations when that would come off because the intent of the program was so that the store managers didn't lose this large portion of pay. But the assurance pay was to cushion the transition to a status where the store managers, or many of them, would make less than the assurance pay, so that there wasn't a guarantee that everyone would have their salary or their compensation-based system. I guess the transition was from salary to compensation equal to the assurance pay. What you just said indicates that it seems to suggest that the stores were trying to make certain that they satisfied some sort of guarantee that once they were on commission entirely, they would never, their salary or their compensation, not salary, but their compensation would never fall below their assurance pay. I guess I wasn't quite clear enough with how that sales aspect works. So each, it's month to month, and the sales are based off the previous month or the commissions are. And so what would happen is employees would start breaking out three, four, or five months at a time, but maybe January and February when they're the slowest months, they wouldn't reach that. And so that's kind of when they'd break them off of it at that point. So when they'd move close enough so that the employee's not losing $6,000, $8,000, $10,000 a year because they don't want to lose their employees, that's when they'd transition them off of the assurance pay when the store had kind of caught up to that point in time where the salaries met. Mr. Russell's a little bit of a different category because he'd been with the company so long, but it had been moved to such a low-volume store based off of his prior FMLA use, but that's kind of what the transition was. So for a lot of employees, it wouldn't have taken that long because the salaries were in line with the store that they were originally at. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?